```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
DEVIN DARBY,                                                :
                                                            :
                                Plaintiff,                  :
                                                            :    **MEMORANDUM DECISION**
                - against -                                 :    **AND ORDER**
                                                            :
NEW YORK CITY HEALTH AND                                    :    18-cv-2869 (BMC)(VMS)
HOSPITALS CORPORATION, DAVID                                :
GREENMAN, CITY OF NEW YORK,                                 :
CORRECTIONAL DENTAL ASSOCIATES,                             :
RAFAEL HAMILTON, AND JOHN DOES 1-2,                         :
                                                            :
                                Defendants.                 :
                                                            :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiff *pro se* was incarcerated at two correctional facilities in Riker's Island from February to June 2017. He commenced this action under 42 U.S.C. § 1983 for violations of his Eighth and Fourteenth Amendment rights against all defendants, as well as raising a claim for medical malpractice against defendants New York City Health and Hospitals Corporation ("NYCHHC"), Correctional Dental Associates ("CDA"), and defendants Greenman and Hamilton. Defendants the City of New York, NYCHHC, CDA, and Greenman have moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons below, the motion is granted.[1]

---

[1] As of the time of this order, defendants Hamilton and John Does 1-2 had not been properly served nor have they appeared in this action. But because the claims against the appearing defendants and the absent defendants are based on the same legal theories, this order applies to all the defendants named in the complaint. See Black v. Blackmun, No. 11-cv-2372, 2011 WL 6019394, at *2 n.3 (E.D.N.Y. Dec. 1, 2011); Alki Partners, L.P. v. Vatas Holding GmbH, 769 F.Supp.2d 478, 499 (S.D.N.Y.2011).

**BACKGROUND**

The following facts are taken from the amended complaint (and its supplement) and are deemed true for the purpose of this motion.

Beginning February 1, 2017, plaintiff began to suffer from gum inflammation in his right cheek, which became more inflamed and painful over the next two days. The inflammation disrupted plaintiff's ability to eat, talk, and sleep. During a health screening the next day, Riker's Island dental clinicians found a three-by-three centimeter "bulge" in plaintiff's gum by his cheek. The clinicians gave plaintiff ibuprofen.

On February 6, 2017, plaintiff completed a written "sick call" request, which detailed the pain he was experiencing and requested medical attention. Plaintiff gave the request to the correctional officer responsible for submitting the request to the "medical intake mailbox." The next day, plaintiff had an appointment at the Riker's Island health clinic, during which he described his symptoms and was again given ibuprofen.

On February 10, 2019, plaintiff submitted another "sick call" request. The next day, he went in for an appointment at the health clinic, during which plaintiff saw defendant Greenman.[2] Plaintiff's condition was assessed as a dental abscess.

Plaintiff saw defendant Greenman again on February 17, 2017. Defendant Greenman attempted to extract plaintiff's tooth, and plaintiff explained that his gums were bothering him, not his tooth. Defendant Greenman reexamined plaintiff and "affirmed" that plaintiff would need to see a specialist for his gum pain (outside of Riker's Island). Defendant Greenman diagnosed plaintiff's condition as a parotid gland issue.

---

[2] Defendant Greenman is a dentist employed by defendant CDA, which is a subcontractor of defendant NYCHHC.

The next week, defendant Greenman called plaintiff back into the clinic for another attempt to extract his tooth. Plaintiff refused the visit, because he did not think he needed a tooth extraction.

Between February and April 2017, plaintiff made approximately 15 "sick call" requests. Plaintiff also filed three to four grievances in a "grievance box" during March and April 2017, that described his "worsening pain and suffering" and requested immediate medical attention. Plaintiff did not receive any medical attention other than the examinations described above.

Between late April and the beginning of May 2017, plaintiff was transferred to another facility within Riker's Island. During his intake at that facility, plaintiff described his gum pain and symptoms, and he was scheduled to see defendant Hamilton at that facility on May 25, 2017.[3] During the May 25th appointment, plaintiff described to defendant Hamilton his symptoms, that he had been experiencing them for months, and that he had been referred for a specialist evaluation. Defendant Hamilton proceeded to give plaintiff a basic dental cleaning. Plaintiff expressed to defendant Hamilton that he needed more than a basic cleaning.

Plaintiff continued to experience symptoms from his gum inflammation and made additional "sick call" requests for immediate medical attention, which went unanswered through June 2017, when he was transferred upstate to Watertown Correctional Facility. During his intake at Watertown, plaintiff described his symptoms and was scheduled to see a doctor. The doctor referred plaintiff to a specialist for radiology testing. After plaintiff was evaluated by several specialists, a "firm, large mass" was discovered in his gum area. Plaintiff underwent gum surgery on February 13, 2018. Since the surgery, plaintiff has experienced swelling in his gum and facial numbness.

---

[3] Defendant Hamilton is also a dentist employed by defendant CDA.

Plaintiff claims that he suffered "significant and lasting damage" from defendants' failure to provide him with proper medical treatment. Specifically, plaintiff claims that because his speech was impaired, he could not communicate with his family or friends by telephone. His relationships suffered between February 2017 (when he first experienced the inflammation) and February 2018 (when he finally received the surgery) due to his inability to communicate, including a three-year relationship with his then-fiancée (which was lost). Moreover, during this time, plaintiff was unable to chew, and he lost 20 pounds.

Plaintiff alleges that had the "dentist defendants" (presumably NYCHHC, CDA, Greenman, and Hamilton) provided plaintiff with prompt and appropriate medical care, plaintiff would not have suffered the physical pain he endured during the year at issue. He also claims that had the correctional defendants (presumably John Does 1-2) responded to his grievances, he could have been treated earlier and avoided significant pain. Plaintiff seeks an unspecified amount of damages.

## DISCUSSION

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." See Fed. R. Civ. P. 8(a)(2). Although the Court must construe *pro se* pleadings liberally, see Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)), and interpret them "to raise the strongest arguments that they suggest," Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474-76 (2d Cir. 2006) (internal citation omitted), a *pro se* complaint must still include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

The Court must accept as true all the well-pled allegations contained in the complaint. Iqbal, 556 U.S. at 678. But this tenet "is inapplicable to legal conclusions." Id. "[D]etailed factual allegations" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555).

In addition to this requirement of a well-pled complaint, plaintiff must also allege facts that amount to a violation of law. Plaintiff's amended complaint, as supplemented, includes several specific facts and tells a cohesive story, but no matter how detailed those facts are, they still must allege that defendants committed a violation of his constitutional rights to state a claim for relief. See Alharbi v. Miller, No. 18-CV-2435, 2019 WL 1367758, at *18-19 (E.D.N.Y. Mar. 26, 2019).

## I. Section 1983

To maintain an action under § 1983, a plaintiff must allege that the conduct was "committed by a person acting under color of state law" and "deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994).

### A. Municipal Liability

To hold a municipality or other public entity liable under § 1983, "a plaintiff must show that 'the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 125 (2d Cir. 2004) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978)). "The City cannot be held liable for the acts of its employees under a theory of *respondeat superior*." See Monell, 436 U.S. at 692.

Plaintiff's amended and supplemental complaint is entirely devoid of any factual allegations about a municipal policy or practice that resulted in a violation of his constitutional rights. Thus, plaintiff has failed to state a claim under § 1983 against defendants the City of New York, NYCHHC, and CDA, because these municipal entities cannot be held liable for the alleged misconduct of their employees.[4]

### B. *Individual Defendants Greenman and Hamilton*

Plaintiff claims that defendants' deliberate indifference to his serious medical concerns violated his rights under the Eighth and Fourteenth Amendments. The Court takes judicial notice that plaintiff was a pretrial detainee until April 27, 2017, when he was sentenced for criminal possession and sale of a controlled substance in the fifth degree.[5] A pretrial detainee's claims of unconstitutional confinement are derived from the Due Process Clause of the Fourteenth Amendment, while a convicted prisoner's claims of unconstitutional confinement are derived from the Eighth Amendment. See Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017). Thus, plaintiff's claim arises under the Fourteenth Amendment until April 27, 2017 – against defendant Greenman, after which it arises under the Eighth Amendment – against defendant Hamilton.[6]

Whether brought under the Fourteenth or the Eighth Amendment, to state a claim for deliberate indifference a plaintiff must satisfy a two-pronged test: first, that the plaintiff suffered a "sufficiently serious" constitutional deprivation, and second, that the defendant acted with deliberate indifference. Cf. Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017); see Molina v. Cty. of Westchester, No. 16 CV 3421, 2017 WL 1609021, at *2 (S.D.N.Y. Apr. 28, 2017). The

---

[4] Defendants NYCHHC and CDA have not argued that they are not state actors.

[5] See http://nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ2/WINQ120 (last visited 4/31/2019).

[6] Defendants Greenman and Hamilton also have not argued that they are not state actors.

first prong is the same under both the Fourteenth and the Eighth Amendments, but the second prong of the test is different depending on whether the plaintiff is a pretrial detainee or a convicted prisoner.

As for the first prong of the test – whether plaintiff suffered a sufficiently serious constitutional deprivation, which applies to both plaintiff's Fourteenth and Eighth Amendment claims – plaintiff "must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." Darnell, 849 F.3d at 30 (internal quotation marks and citations omitted). "There is no 'static test' to determine whether a deprivation is sufficiently serious; instead, 'the conditions themselves must be evaluated in light of contemporary standards of decency.'" Id. (quoting Blissett v. Coughlin, 66 F.3d 531, 537 (2d Cir. 1995)). Where, as here, the basis of the claim is deliberate indifference to serious medical needs, plaintiff must show that he did not receive adequate care and that the inadequacy was sufficiently serious. See Salahuddin v. Goord, 467 F.3d 263, 280 (2d Cir. 2006).

Plaintiff has failed to allege facts which suggest that between February and June 2017 (when he was transferred upstate) plaintiff's lack of what he would characterize as appropriate medical care posed an unreasonable risk of serious damage to his health. Plaintiff contests both the course of treatment that defendants Greenman and Hamilton took and defendants Greenman's and Hamilton's failure to have plaintiff see a specialist. Where "the unreasonable medical care is a failure to provide any treatment . . . courts examine whether the [] medical condition is sufficiently serious." Id. By contrast, if "the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry focuses on the challenged delay or interruption in treatment rather than the [] underlying medical condition alone." Id. (internal quotation marks and alterations omitted).

7

Read most favorably to plaintiff, Greenman and Hamilton felt an extraction or a basic cleaning, respectively, was necessary to relieve the abscess, whereas plaintiff wanted to leave the tooth and simply drain or lance the abscess. The dentists, however, could use their own medical judgment, and did not have to give plaintiff his preferred course of treatment. Plaintiff has not alleged why his condition at the time defendants treated plaintiff was sufficiently serious to warrant different or additional care. He simply argues that he was in pain, and that defendants Greenman and Hamilton undertook obviously incorrect courses of treatment.

These legal conclusions cannot form the basis of a constitutional claim – rather, plaintiff must allege facts to suggest that his medical condition was "sufficiently grave" such that the deprivation denied him "the minimal civilized measure of life's necessities." Id. at 279; see also Howard v. Brown, No. 15 CIV. 9930, 2018 WL 3611986, at *6 (S.D.N.Y. July 26, 2018) ("Under the objective prong, a medical need is sufficiently serious if it presents a condition of urgency, one that may produce death, degeneration, or extreme pain.") (internal quotations omitted). Simply alleging that he was in pain, which disrupted his ability to chew, talk, and sleep is not enough; plaintiff must allege facts as to why defendants' allegedly inadequate treatment in an attempt to cure those symptoms (by tooth extraction and basic cleanings) deprived plaintiff of his constitutional rights.

As to the alleged delay in treatment, although plaintiff claims that had he been referred to a specialist sooner, he would have avoided a year of pain, he does not allege why this delay was unreasonable, or why it risked serious damage to his future health. See Darnell, 849 F.3d at 30. According to the complaint, there was a gap of about two months between when defendant Greenman "affirmed" that plaintiff should see a specialist and when plaintiff was transferred to another facility and was no longer in defendant Greenman's care. Then, there was a gap of two

8

more months during which defendant Hamilton did not refer plaintiff to a specialist, before plaintiff was transferred upstate and was no longer in defendant Hamilton's care.

The key as to either gap of time is not that plaintiff experienced pain for a longer amount of time that he might have otherwise because of these two periods of two-month delays, it is whether the facts of those delays, standing alone, can plausibly be said to have created an unreasonable risk to plaintiff's future health, which plaintiff has not alleged. Nor, for that matter, can either defendant be liable for a four-month delay, because they each treated plaintiff for only a two-month period and did not have any control over plaintiff's treatment for the other two-month period. Thus, plaintiff has failed to allege facts that plausibly suggest that he suffered a sufficiently serious constitutional deprivation because of defendants' conduct (under either the Fourteenth or the Eighth Amendments).

As mentioned above, the second prong of the test – whether defendants acted with deliberate indifference – depends on plaintiff's status as a pretrial detainee or a convicted prisoner, both of which are addressed below, in turn.

"To survive a motion to dismiss . . . [a] pretrial detainee . . . must plausibly allege the conduct complained of was objectively unreasonable, i.e., not reasonable under the circumstances." Molina, 2017 WL 1609021, at *4. The alleged deprivation of medical care between February and April 2017 (by defendant Greenman) was not objectively unreasonable. In response to his "sick call" requests, over the month of February, plaintiff twice saw the Riker's Island prison clinicians, who gave plaintiff a diagnosis and over-the-counter pain medication for treatment. Plaintiff also twice saw defendant Greenman, who diagnosed plaintiff and tried to treat him by tooth extraction. Although plaintiff contests defendant Greenman's

9

course of treatment, plaintiff does not allege any facts as to why it was wrong, or how defendant knew or should have known it was wrong, other than the fact that plaintiff told him it was wrong.

Even though plaintiff did not see a doctor in the months of March and April, plaintiff has not sufficiently alleged that was a result of defendant Greenman's conduct. Indeed, plaintiff himself refused subsequent treatment because plaintiff disagreed with defendant Greenman's course of treatment. Although defendant Greenman recognized the need to refer plaintiff to a specialist, and plaintiff never saw a specialist, within two months of that "affirmance," plaintiff was transferred to a different Riker's Island facility where he saw a new doctor (defendant Hamilton). But, other than alleging that defendant Greenman was aware of the "serious nature" of plaintiff's medical condition, plaintiff includes no facts to suggest that defendant Greenman's failure to immediately refer plaintiff to a specialist belied the contemporary standards of decency.[7]

At best, the complaint can be read to allege that defendant Greenman recognized that plaintiff needed to see a specialist, but that plaintiff never saw one.[8] Plaintiff does not allege why he never saw a specialist, and why that failure is attributable to defendant Greenman. More importantly, even assuming defendant Greenman did fail to make a referral, plaintiff does not include facts that suggest that defendant Greenman did so intentionally or recklessly in the face of a known "excessive risk" to plaintiff's health (or a risk about which defendant should have known). See Darnell, 849 F.3d at 35. Indeed, given that plaintiff was incarcerated at the time, plaintiff does not allege how defendant Greenman would even have authority to demand that

---

[7] Indeed, the complaint can even be read to imply that defendant Greenman did in fact make the referral, but plaintiff was transferred to a different facility and a different dentist before the referral could occur.

[8] Notably, plaintiff does not allege that defendant Greenman failed to make the referral. Although the Court has an obligation to read a *pro se* complaint liberally, the Court cannot change the facts to affirmatively create claims for a *pro se* litigant where a claim otherwise would not exist.

10

plaintiff be transported from Riker's Island to see a specialist immediately (considering that plaintiff's condition was not life threatening). Thus, plaintiff has not alleged facts sufficient to suggest that defendant Greenman was deliberately indifferent.

By contrast, to survive a motion to dismiss "a convicted prisoner must plausibly allege the defendant(s) subjectively knew what they had done . . . was unreasonable." Molina, 2017 WL 1609021, at *4. In other words, plaintiff has to allege facts which show that defendant knew of and disregarded an excessive risk to plaintiff's health. See Darnell, 849 F.3d at 32. Plaintiff's claims here involve defendant Hamilton's course of treatment – basic cleanings – and his failure to follow through on defendant Greenman's "affirmance" that plaintiff needed to see a specialist. But other than alleging that plaintiff told defendant Hamilton that defendant Greenman said he needed a specialist and that plaintiff told defendant Hamilton that he required more than basic cleanings, plaintiff has failed to plead any facts tending to show that defendant Hamilton knew that his conduct was unreasonable. Simply concluding that defendant Hamilton had the requisite mental state for liability is an improper legal conclusion, and standing alone, it is not enough to state a claim for deliberate indifference. See id. Thus, plaintiff has failed to satisfy the deliberate indifference prong as to both individual defendants under both the Fourteenth and the Eighth Amendments.

Moreover, as to both defendants, plaintiff's claims implicate the original holding of Estelle v. Gamble, 429 U.S. 97 (1976) – which established the deliberate indifference theory of liability. In Estelle, the Supreme Court addressed whether an inmate stated a claim under § 1983 for a violation of the Eighth Amendment related to his medical treatment (or alleged lack of medical treatment) in prison. First, the Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' []

11

proscribed by the Eighth Amendment." Estelle, 429 U.S. at 104 (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). The Court explained that "[t]his is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id. at 104-105.

Next, however, the Supreme Court explained that, "in the medical context, an inadvertent failure to provide adequate medical care" does not amount to an Eighth Amendment violation. Id. at 105. Thus, to state a cognizable claim for relief under § 1983, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106.

In Estelle, the inmate saw medical personnel 17 times over the course of a three-month period for several health issues, including a back injury. The prison doctors diagnosed his injury "as a lower back strain and treated it with bed rest, muscle relaxants and pain relievers." Id. at 107. The inmate argued that the doctors should have done more "by way of diagnosis and treatment, and suggest[ed] a number of options that were not pursued." Id. Although the Supreme Court acknowledged that an x-ray of the inmate's lower back might have led to appropriate diagnosis and treatment – which, presumably, would have relieved the inmate of some period of pain and suffering – the Supreme Court held that this was a "classic example of a matter for medical judgment." Id. And an incorrect medical judgment does not a constitutional violation.

Just as the Supreme Court found in Estelle, at most, defendants' conduct here constitutes medical malpractice, and "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." Id. at 106. Although plaintiff claims that additional or

12

different treatment or diagnostic measures would have led to earlier and more appropriate care, that is not a cognizable claim for deliberate indifference under Estelle.

Thus, plaintiff has not stated a claim for relief under § 1983 against defendants Greenman and Hamilton.

### C. *Individual Defendants John Does 1-2*

Plaintiff also alleges that the two John Doe correctional officer defendants were deliberately indifferent to his serious medical condition by ignoring the grievances that plaintiff filed between March and April 2017. During that time, plaintiff was a pretrial detainee, so his claim against John Does 1-2 arises under the Fourteenth Amendment.

To state a claim for relief under § 1983, plaintiff must include specific facts alleging the personal involvement of each named defendant. See Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006). Here, plaintiff alleges that he put three to four written grievances in a "grievance box" that "described in detail the worsening pain and suffering he was experiencing, and requested immediate medical attention." Plaintiff claims that due to these grievances, officials at the Department of Corrections (i.e., John Does 1-2) were aware of plaintiff's serious medical condition and his need for urgent medical attention.

But plaintiff has not alleged that the grievances ever reached the John Doe defendants before he was transferred to another facility, nor does he allege facts – rather than legal conclusions – to suggest that the John Doe defendants knew or should have known of an excessive risk to plaintiff's health. Moreover, the same finding above applies here that plaintiff has not met the requisite showing of a "sufficiently serious" constitutional deprivation. Thus, for the same reasons, plaintiff has failed to state a claim under § 1983 as to John Does 1-2.

## II. Medical Malpractice

In addition to his § 1983 claims, plaintiff also claims that defendants NYCHHC, CDA, Greenman, and Hamilton are liable to him for medical malpractice. Because plaintiff's federal law claims are dismissed, the Court declines to exercise supplemental jurisdiction over this state law claim. See 28 U.S.C. § 1367(c)(3).

## CONCLUSION

Accordingly, defendants' [58] motion to dismiss is GRANTED as to plaintiff's § 1983 claims. Plaintiff's state law claim for medical malpractice is dismissed without prejudice to reassertion in state court. Leave to amend is denied as futile, as plaintiff has not stated a claim for relief after filing an amended complaint, which he further supplemented. See Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000). The Clerk of Court is directed to enter judgment.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore in forma pauperis status is denied for purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

Dated: Brooklyn, New York
       May 3, 2019

U.S.D.J.